James J. Pisanelli, Esq., Bar No. 4027
Michael V. Infuso, Esq., Bar No. 7388
Jarrod L. Rickard, Esq., Bar No. 10203
BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
Telephone: (702) 382-2101

Attorneys for Defendants
Wynn Las Vegas, LLC, Wynn Resorts, Ltd.
and Wynn Resorts Holdings LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM NORKUNAS; PETER SPALLUTO; and, DISABLED RIGHTS ACTION COMMITTEE, a Utah nonprofit corporation;<br><br>                 Plaintiffs,<br><br>vs.<br><br>WYNN LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN RESORTS, LIMITED, a Nevada Corporation; and WYNN RESORTS HOLDINGS, LLC, a Nevada Limited Liability Company;<br><br>                 Defendants. | Case No. 2:07-CV-00096-RLH-PAL<br><br>**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT** |

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendants Wynn Las Vegas, LLC, Wynn Resorts Limited, and Wynn Resorts Holdings, LLC (collectively "Wynn") hereby move for an order dismissing Plaintiffs Peter Spalluto's ("Spalluto"), William Norkunas' ("Norkunas") and the Disabled Rights Action Committee's ("DRAC") (collectively "Plaintiffs") First Amended Complaint. Plaintiffs' First Amended Complaint suffers from the same fatal infirmities as their Original Complaint. As demonstrated below, all of Plaintiffs' claims fails as a matter of law because Plaintiffs cannot meet their burden of establishing a "case or controversy" with respect to their claims for injunctive relief, the sole remedy available under Title III of the Americans with Disabilities Act ("ADA"). Alternatively, Wynn seeks an order requiring Plaintiffs to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e).

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(e), any pleadings on file with the Court, the attached Memorandum of Points and Authorities and exhibits thereto, and any other argument that the Court may wish to consider.

Respectfully submitted this 22nd day of June, 2007.

BROWNSTEIN HYATT FARBER SCHRECK


    /s/ Michael V. Infuso
James J. Pisanelli, Esq., Bar No. 4027
Michael V. Infuso, Esq., Bar No. 7388
Jarrod L. Rickard, Esq., Bar No. 10203
300 South Fourth Street, Suite 1200
Las Vegas, Nevada  89101

Attorneys for Defendants
Wynn Las Vegas, LLC, Wynn Resorts, Ltd.
and Wynn Resorts Holdings LLC

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PROCEDURAL HISTORY

On or about January 24, 2007, Plaintiffs filed their Complaint against Wynn.   (*See* Plaintiffs' Complaint (Docket No. 1)).   Because Plaintiffs' Complaint only vaguely alleged that Wynn violated the ADA due to the alleged existence of "discriminatory conditions" at "Wynn Las Vegas," Wynn filed a Motion to Dismiss because such allegations fall far short of stating a claim under Title III of the ADA.   (Docket No. 6-1).   Plaintiffs did not oppose Wynn's motion. Rather, Plaintiffs acknowledged the fatal inadequacies of their Complaint and filed their First Amended Complaint.   (Docket No.  8).   However, as discussed in detail below, Plaintiffs' First Amended Complaint not only fails to correct the fatal pleading deficiencies of their Original Complaint, but it also creates even more problems.   After two attempts, Plaintiffs have failed to state a claim under Title III of the ADA.   Plaintiffs should not be allowed another try.

### II.    ALLEGATIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Like their Original Complaint, Plaintiffs' First Amended Complaint vaguely alleges that the "Wynn Las Vegas" is not in compliance with Title III of the ADA.[1]   Based on the alleged ADA violations, Plaintiffs seek a permanent injunction requiring Wynn to cease operating Wynn Las Vegas unless and until the facility is in ADA compliance.   (*See id.* at p. 8).   Plaintiffs' true motive in bringing this action is revealed by their request for a "disgorgement of Defendants' profits associated with the Defendants' use of the Wynn Las Vegas while Wynn Las Vegas is inaccessible."   (*Id.* at p. 9).

---

[1]In their Motion to Dismiss, Wynn informed Plaintiffs and this Court that neither Wynn Resorts Limited nor Wynn Resorts Holdings, LLC owns or operates the Wynn Las Vegas; that is, neither of these named defendants are a proper party to this action.  Yet, for some inexplicable reason, Plaintiffs continue to maintain this action against Wynn Resorts Limited and Wynn Resorts Holdings, LLC.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

**A.**   **Relevant Allegations Relating To Plaintiff Norkunas.**

Plaintiff Norkunas is, by his own admission, a professional ADA "tester."  (*See* Ex. "1" at ¶ 3).[2]  Norkunas alleges that he "encountered discriminatory conditions (in, *inter alia*, the seating arrangements for theatrical performances, the lack of accessible routes, inaccessible counters, and inaccessible restrooms) in February of 2006."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)).  Norkunas also alleges that he "again encountered discriminatory conditions at Wynn Las Vegas on July 4, 2006."  (*See id.*).  Given that Norkunas alleges that he actually "encountered" the alleged discriminatory conditions, he should be able to specifically identify each and every alleged ADA violation and its location.  However, Norkunas fails to do so.  Instead, Norkunas identifies a collection of exceedingly broad categories of alleged ADA violations and, with two exceptions, provides no indication whatsoever of the location of the alleged discriminatory conditions.[3]

Specifically, Norkunas alleges that the discriminatory conditions that he allegedly encountered at Wynn Las Vegas "include, *but are not limited to*":[4]

---

[2] Whether Norkunas was acting in his capacity as an ADA "tester" when he allegedly encountered the alleged discriminatory conditions at the Wynn Las Vegas is highly relevant in determining whether Norkunas has standing to maintain this action.  *See, e.g.*, *Harris v. Stonecrest Care Auto Center, LLC*, 472 F. Supp. 2d 1208, 1216-17 (S.D. Cal. 2007) (holding that an ADA "tester" lacked standing to bring an ADA action); *see also Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164-68  (C.D. Cal.  2005) (holding that litigation history is relevant in determining standing); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2004) (same).

[3] Wynn Las Vegas features 2,716 guest rooms and suits, 111,000 square foot casino, 22 food and beverage outlets, an 18-hole golf course, approximately 223,000 square feet of meeting space, and approximately 76,000 square feet of retail space. (*See* http://phx.corporate-ir.net/phoenix.zhtml?c=132059&p=irol-IRHome).   Given the size of Wynn Las Vegas, identification of the location of the alleged ADA violations is critical to giving Wynn fair and adequate notice of the alleged ADA violations so that Wynn can investigate Plaintiffs' allegations and make any remediations that are necessary and/or appropriate.  Also, as discussed *infra*, requiring Plaintiffs to identify the precise location of the alleged ADA violations is appropriate given that Plaintiffs only have standing (if at all) to sue for ADA violations that they actually encountered or have knowledge of.

[4] Plaintiffs (and Tamara Thompson on behalf of DRAC) all use the qualifying language "include, but not limited to" when generally identifying the discriminatory conditions that they allegedly encountered at Wynn Las Vegas.  (*See* Plaintiffs' First Amended Complaint at ¶¶ (9(a), 9(b) and 9(c)).  However, as demonstrated *infra*, Plaintiffs only have standing (if at all) to sue for those alleged ADA violations specifically identified in their First Amended Complaint.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

(1)   No ADA required disabled seating in both theaters (not compliant with ADAAG[5] 4.1.3(19), 4.33.2, 4.33.3, 4.33.4);

(2)   Lack of ADA directional signage (not compliant with ADAAG 4.4.2(7), 4.1.3(16));

(3)   Accessible routes with changes in elevation requiring handrails (not compliant with ADAAG 4.1, 4.3, 4.5, 4.8);

(4)   Ramps without ADA compliant handrails (not compliant with ADAAG 4.1, 4.8);

(5)   Interior doors requiring more than 5lbs of force to open (not compliant with ADAAG 4.1, 4.13);

(6)   Counters with cash registers that were not lowered for wheelchair access (not compliant with ADAAG 4.1, 4.32.7.2);

(7)   Counters for food that were not lowered (not compliant with ADAAG 4.1, 4.32.4, 5.2);

(8)   Dining areas with no accessible tables (not compliant with ADAAG 4.1, 4.32);

(9)   Public restrooms with inaccessible elements (not compliant with ADAAG 4.1, 4.22); and

(10)   A lowered counter (at the towers registration desk) that was repeatedly rendered inaccessible by placement of ornamental items so that less than 36 inches of counter space was available (as required under ADAAG 7.2(2)).

(*See id.*) (emphasis in original).

Finally, Norkunas alleges that he travels to Las Vegas more than once a year and that he "plans on staying at Wynn Las Vegas each time he travels to Las Vegas." (*See id.* at ¶12). However, Norkunas fails to allege any definite or concrete plan to return to Las Vegas or, more importantly, to Wynn Las Vegas. (*See generally id.*).

---

[5] "ADAAG" refers to the ADA Accessibility Guidelines for buildings and facilities. *See* 28 C.F.R. Part 36, App. A.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

1

**B.**   **Relevant Allegations Relating To Plaintiff Spalluto.**

2

Plaintiff Spalluto alleges that he "encountered discriminatory conditions at Wynn

3

Las Vegas in August of 2006." (*See id.* at ¶ 9(b)). The discriminatory conditions allegedly

4

encountered by Spalluto "include, *but are not limited* to no ADA required disabled theater seating

5

(which condition is not compliant with ADAAG 4.1.3(19), 4.33.3, 4.33.4)." (*Id.*) (emphasis in

6

original). Spalluto also alleges that he travels to Las Vegas more than once a year and that he

7

"desires the ability to access *on a non-discriminatory basis* the goods and services available to the

8

public at Wynn Las Vegas." (*See id.* at ¶ 13) (emphasis in original). Like Norkunas, Spalluto

9

fails to allege any definite or concrete plan to return to Wynn Las Vegas. (*See generally id.*).

10

Importantly, Spalluto concedes in his First Amended Complaint that he, like Norkunas, is

11

a professional ADA plaintiff. (*See id.* at ¶ 3). In fact, Spalluto has filed no less than six (6) ADA

12

lawsuits in this judicial district alone. (*See* Exs. "2" through "7"). Among the various defendants

13

in those actions is Emerald Suits (Ex. "2"), Travelodge Ambassador Strip Inn (Ex. "4"), Gold

14

Rush Casino and Hotel, LLC (Ex. "5"), and 155 East Tropicana, LLC (*i.e.*, Hooters Casino Hotel)

15

(Ex. "6"). All of Spalluto's ADA complaints, including his complaint against Wynn, include an

16

allegation that he "plans to return to the property to avail himself of the goods and services

17

offered to the public at the property." (*See* Ex. "2" at ¶ 6, Ex. "4" at ¶ 6, Ex. "5" at ¶ 6 and Ex. "6"

18

at ¶ 6). By all accounts, Spalluto's alleged "plans to return" to each of the properties, including

19

Wynn Las Vegas, are disingenuous at best.

20

**C.**   **Relevant Allegations Relating To DRAC.**

21

By virtue of the First Amended Complaint, DRAC is now a party plaintiff in this action.

22

(*See* Plaintiffs' First Amended Complaint at ¶ 4). In an effort to manufacture standing on behalf

23

of DRAC, Plaintiffs alleges that Tamara Thompson (allegedly a member of DRAC) visited Wynn

24

Las Vegas on March 21, 2007, more than three (3) months *after* Plaintiffs filed their Original

25

Complaint, and encountered discriminatory conditions. (*See id.* at ¶ 9(c)). Thompson alleges that

26

the alleged discriminatory conditions that she encountered "include, *but are not limited to*":

27

(1) Counters with cash registers that were not lowered for wheelchair
access (not compliant with ADAAG 4.1, 4.32.4, 7.2); and

28

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

6

(2)   Placement of objects so as to render inaccessible a lowered counter and a bathroom mirror (thus making those elements of Wynn Las Vegas noncompliant with ADAAG 4.22 and 7.2).

(*Id.*).

Like Plaintiffs Norkunas and Spalluto, Thompson is also a professional ADA plaintiff.  In fact, Thompson has instituted multiple ADA lawsuits in this judicial district in her own name and on behalf of DRAC.  (*See* Exs. "8" through "10").[6]  There is little doubt that, given the timing of her alleged visit to Wynn Las Vegas, Thompson visited Wynn Las Vegas for the sole purpose of bringing this action.  Moreover, like the rest of the Plaintiffs, Thompson does not allege any definite or concrete plan to return to Wynn Las Vegas.  (*See generally* Plaintiffs' First Amended Complaint).[7]

## III.   PLAINTIFFS CANNOT MEET THEIR BURDEN OF ESTABLISHING A "CASE OR CONTROVERSY" WITH RESPECT TO THEIR CLAIMS FOR INJUNCTIVE RELIEF.

### A.   <u>Standard For Dismissal Under Rule 12(b)(1).</u>

Under Fed. R. Civ. P. 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion.  *See Tosco Corp. v. Communities For a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).  Attacks on jurisdiction under Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint.  *See Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  As demonstrated below, Plaintiffs have not (and cannot) meet their

---

[6] Thompson has also filed multiple lawsuits in her own name and on behalf of DRAC under the Fair Housing Act.  (*See* Exs. "11" through "13").  In those lawsuits, as is likely here, Thompson admits that she acted as a "tester" for the sole purpose of filing suit.  (*See* Exs. "11" at ¶ 17, "12" at ¶ 16, and "13" at ¶ 16).

[7] Plaintiffs further attempt to create standing for DRAC by alleging that Robert Lee, allegedly another member of DRAC, "has knowledge of the discriminatory conditions at Wynn Las Vegas."  (*See* Plaintiffs' First Amended Complaint at ¶ 14).  However, Plaintiffs do not allege:  (1) that Mr. Lee ever visited Wynn Las Vegas; (2) that Mr. Lee has any definite or concrete plan to visit Wynn Las Vegas; or (3) identify a single "discriminatory condition" that Mr. Lee allegedly has knowledge of.  (*See id.*).  Absent such allegations, Mr. Lee can hardly create standing on behalf of DRAC.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

burden of establishing Article III standing, a necessary prerequisite to federal subject matter jurisdiction.

> **B.**   **Plaintiffs Cannot Demonstrate That There Is A Realistic And Immediate Threat That They Will Be Wronged Again By Wynn And, Therefore, Their Claims For Injunctive Relief Fail As A Matter Of Law.**

Article III makes it clear that federal courts can only hear "cases or controversies." U.S. Const. art. III.   To establish the existence of a case or controversy, a plaintiff must demonstrate (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable court ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).   "The party invoking federal jurisdiction bears the burden of establishing these elements."   *Id.* at 561, 112 S. Ct. at 2136.   Plaintiffs cannot meet this heavy burden.

In order for Plaintiffs to demonstrate an actual case or controversy to seek injunctive relief,[8] Plaintiffs must demonstrate "a real and immediate threat of future injury by the defendant[s]."   *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 107 n.8, 103 S. Ct. 1167, 1168 n.8 (1983); *see also Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) ("[W]here, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate 'that he is realistically threatened by a *repetition* of [the violation].'") (emphasis in original).   "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."   *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 676 (1974).   "It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."   *Id.* at 107 n.8, 103 S. Ct. at 1668 n.8 (emphasis in original).

Additionally, an alleged past violation of the ADA standing alone is insufficient to give rise to an Article III case or controversy for injunctive relief.   *See Lyons*, 461 U.S. at 105, 103 S.

---

[8] "Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III."   *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).   For this reason, Plaintiffs' request for damages in the form of "the disgorgement of Defendants' profits" must be dismissed as a matter of law.

Ct. at 1667; *see also Delil v. El Torito Rests., Inc.*, No. C-94-3900-CAL, 1997 WL 714866, at *3-4 (N.D. Cal. June 24, 1997). Rather, "[t]he likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1275 (9th Cir. 1997) (quotation omitted). The United State Supreme Court's decision in *Lyons*, a leading case on standing, is instructive.

In *Lyons*, the plaintiff was stopped for a traffic violation wherein the police officers allegedly applied a chokehold on plaintiff, without any provocation or resistance, rendering plaintiff unconscious. 461 U.S. at 97-98, 103 S. Ct. 1663. Plaintiff thereafter filed suit against the City of Los Angeles seeking a preliminary and permanent injunction barring the use of chokeholds. *Id.* The Supreme Court, applying the principles of law above, held that the plaintiff failed to demonstrate a case or controversy that would justify the equitable relief sought. *Id.* at 105, 103 S. Ct. at 1667. The Supreme Court reasoned that plaintiff's allegations that he had been illegally choked by the city police officers, which presumably gave plaintiff standing to claim damages, "does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation . . . by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* Simply put, the Supreme Court held that because the plaintiff made no showing that he was realistically threatened by a repetition of the alleged chokehold incident, "he has not met the requirements for seeking an injunction in a federal court. . . ." *Id.* at 109, 103 S. Ct. at 1669. *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (applying *Lyons* in determining standing for claims brought under Title III of ADA).

In the context of the ADA, a plaintiff may establish the injury in fact requirement of standing (*i.e.*, a "concrete and particularized" and "actual or imminent" injury) in two ways: (1) that the plaintiff personally encountered the barrier complained of; or (2) the plaintiff has actual knowledge of the barrier complained of and has been deterred from visiting the public accommodation because of the barrier. *See Martinez v. Longs Drug Stores, Inc.*, No. CIVS-03-1843 DFL, 2005 WL 2072013, at *3 (E.D. Cal. Aug. 25, 2005) (citing *Pickern v.*

9

*Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-38 (9th Cir. 2002) (holding that an ADA plaintiff has suffered an injury if the "plaintiff has actually become aware of the discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation. . . .")).  Put another way, an ADA plaintiff must establish, at a minimum, that he has knowledge of the alleged ADA violation and is deterred from visiting the public accommodation.  *See Pickern*, 293 F. 3d at 1136-38; *see also Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1141 (S.D. Cal. 2006).  But, in either case, an ADA plaintiff must also demonstrate a real and immediate threat of future violations of the ADA to obtain injunctive relief.  *See Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 254 F.3d 846, 850 (9th Cir. 2001).

Here, Plaintiffs cannot demonstrate that there is a real and immediate threat that they will again be subjected to the alleged ADA violations, assuming, of course, that Plaintiffs were ever subjected to conditions that violated Title III of the ADA.  At most, Plaintiffs establish only a past violation of the ADA.  Past violations of the ADA alone do "not, however, support an inference that Plaintiff[s] face[] a real and immediate threat of *continued, future* violations of the ADA in the absence of injunctive relief."  *Midgett*, 254 F.3d at 850 (emphasis in original).

Courts routinely find no standing for claims for injunctive relief under the ADA (*i.e.*, the sole remedy under Title III) where, as here, a plaintiff fails to show a real or immediate threat of future injury; that is, that plaintiff will again visit the property and again encounter the allege ADA violations.  *See, e.g.*, *Deck v. Am. Haw. Cruises, Inc.*, 121 F. Supp. 2d 1292, 1298-99 (D. Haw. 2000) (finding no standing under ADA because plaintiff failed to allege any plans to use defendant's services in the future); *see also El Torito Restaurants, Inc.*, 1997 WL 714866, at *5 (finding no standing under ADA because plaintiff failed to allege that she intended to return to the restaurant); *O'Brien v. Werner Bus Lines, Inc.*, No. 94-6862, 1996 WL 82484, *5 (E.D. Pa. Feb. 27, 1996) (finding no standing under the ADA because plaintiffs failed to show "that they are likely to use Werner buses in the near future or, if they do us them, that Werner is likely to violate their rights under the ADA again.").

In determining whether a plaintiff's likelihood of returning to a particular establishment is sufficient to confer standing, courts have examined factors such as:  (1) the proximity of the place

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

of public accommodation to plaintiff's residence; (2) plaintiff's past patronage of defendant's business; (3) the definiteness of plaintiff's plans to return; and (4) plaintiff's frequency of travel near the accommodation in question.  *See Harris*, 472 F. Supp. 2d at 1216 (citation omitted). Notably, a plaintiff's litigation history is a relevant factor to consider and can undercut a professed intent to return to the public accommodation.  *See id.* at 1216-17; *see also Molski*, 405 F.Supp.2d at 1164-65 ("Courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return."); *Brother*, 331 F.Supp.2d at 1374-75 (holding that "in view of his extensive litigation history, [plaintiff's] professed intent to return to the property is insufficient."). Additionally, "someday intentions" to return to the property are insufficient to establish standing (*i.e.*, a real or immediate threat of future injury).  *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1148 (9th Cir. 2000); *see also Access 4 All v. Wintergreen Commercial Partnership, Ltd.*, No. CIV. A. 3:05-cv-1307-6, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005) ("'someday intentions' – without any description of concrete plans, or indeed even a specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.'") (emphasis in original) (citation omitted).

Here, none of the Plaintiffs offer any credible allegations demonstrating a definite or concrete plan to return to Wynn Las Vegas sufficient to confer standing on any of the Plaintiffs. Specifically, Plaintiff Spalluto alleges that he travels to Las Vegas "more than once a year" and "desires the ability to access *on a non-discriminatory basis* the goods and services available to the public at Wynn Las Vegas."  (*See* Plaintiffs' First Amended Complaint at ¶ 13) (emphasis in original).  However, this is exactly the type of "someday intentions" that courts routinely find insufficient to establish standing to bring a claim for injunctive relief under Title III of the ADA. *See, e.g.*, *Access 4 All*, 2005 WL 2989307, at *4 (holding that plaintiff's allegations that he "plans to return to the property to avail himself of the goods and services offered to the public at the property" are "someday intentions" and insufficient to obtain standing for injunctive relief under Title III of the ADA).  Spalluto's proffered someday intention to access the "goods and services" at Wynn Las Vegas is particularly tenuous given that he is a resident of Florida and has

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

patronized Wynn Las Vegas only once.  (*See* Plaintiffs' First Amended Complaint at ¶¶ 3 and 9(b)).

Additionally, Spalluto's someday intention to avail himself of the goods and services offered at Wynn Las Vegas is disingenuous and lacks credibility.  Spalluto has made this same allegation in his ADA lawsuits against the Emerald Suits, Travelodge Ambassador Strip Inn, Gold Rush Casino and Hotel, LLC, and Hooters Casino Hotel.  (*See* Exs. "2" at ¶ 6, "3" at ¶ 6, "4" at ¶ 6, "5" at ¶6, and "6" at 6).  *See Harris*, 472 F. Supp. 2d at 1217 (stating that a plaintiff's litigation history is relevant when considering the issue of standing).  Obviously, it is highly improbable and incredible that Spalluto will avail himself of the goods and services of Wynn Las Vegas when (or if) he travels to Las Vegas if he also intends to avail himself of the goods and services offered at the numerous other facilities he is suing.  *See id.* (recognizing that "the large number of Title III claims brought by Plaintiff raises concerns about credibility.").

Given Spalluto's disingenuous and conflicting allegations, it cannot be said with any degree of certainty that Spalluto does, in fact, intend to return to Wynn Las Vegas; that is, there is no likelihood that Spalluto *will be* subjected to the alleged ADA violations at Wynn Las Vegas. Therefore, because there is no real or immediate threat of future injury, Spalluto lacks standing to maintain this action.  *See Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (holding that plaintiffs had no standing to assert claim for injunctive relief for alleged structural barriers because plaintiffs failed to demonstrate that they intended to enter the building in the imminent future).

Plaintiff Norkunas also lacks standing to maintain this action.  By his own admission, Norkunas is a professional ADA tester.  (*See* Ex. "1" at ¶ 3).  In other words, Norkunas was not a bona fide patron of Wynn Las Vegas, but apparently visited Wynn Las Vegas for the *sole* purpose of bringing this action.  As the court in *Harris* observed:

> Where a plaintiff's sole purpose in visiting a local business is to litigate, he may visit the establishment before or during the litigation, but his reason for returning vanishes as soon as litigation is concluded.

* * *

> Therefore, the Court holds that an individual plaintiff's contact with a local establishment made solely for the purpose of bringing a claim under Title III of the ADA, without more, is insufficient to confer Article III standing to seek injunctive relief.

472 F. Supp. 2d at 1219.  On this basis alone, Norkunas lacks Article III standing to maintain this action.

Norkunas lacks standing to maintain this action for yet another reason – he fails to offer any credible allegations demonstrating a definite or concrete plan to return to Wynn Las Vegas. Like Spalluto, Norkunas offers only "someday intentions" of "staying at Wynn Las Vegas each time he travels to Las Vegas."  (*See* Plaintiffs' First Amended Complaint at ¶ 12).  But, Norkunas does not offer any specific or concrete plan to return to Las Vegas, much less stay at Wynn Las Vegas.  (*See id.*).  Nokunas' someday intention to return to Wynn Las Vegas is particularly tenuous give that he:  (1) is a resident of Florida; (2) has visited Wynn Las Vegas only twice, at most; and (3) has not returned to Wynn Las Vegas in almost a year.  (*See id.* at ¶¶ 9(a) and 12). Put simply, Norkunas lacks standing to maintain this action because there no real and *immediate* threat that he will be harmed in future at Wynn Las Vegas.

DRAC also lacks standing to maintain this action.  DRAC's standing to maintain this action depends exclusively on whether Thompson has standing to maintain this action in her own name.  *See Hunt v. Wash. State Apple Advertising Comm.*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441 (1977) (for representative standing to lie, at least one member must have standing on their own). "Standing is established as of the time of the complaint."  *See Harris*, 472 F. Supp. 2d at 1217 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, (TOC), Inc.,* 528 U.S. 167, 191, 120 S.Ct. 693, 709 (2000)).  As demonstrated below, Thompson lacks standing to maintain this action in her own name and, therefore, DRAC also lacks standing.

Here, at the time of the filing of Plaintiffs' Original Complaint (*i.e.*, January 24, 2007), Thompson had never even been to Wynn Las Vegas.  (*See* Plaintiffs' First Amended Complaint at ¶ 9(c)).  In fact, it was not until almost three (3) months *after* Plaintiffs filed their Original Complaint that Thompson allegedly visited Wynn Las Vegas for the first and only time.  (*See id.*). Such belated efforts to create standing are irrelevant and are routinely rejected by courts.  *See,*

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

*e.g.*, *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1253-54 (M.D. Fla. 2000) (holding that plaintiff's visit to defendant's business *after* the complaint was filed did not confer standing); *Access 4 All, Inc.*, 2005 WL 2989307, at *4 (refusing to consider actions taken after complaint was filed in determining standing); *Brother*, 331 F. Supp.2d at 1373-74 (same).

Additionally, like Plaintiffs Spalluto and Norkunas, Thompson fails to offer any credible allegations demonstrating a definite or concrete plan to return to Wynn Las Vegas. That is, Thompson makes no allegation that she intends to return to Wynn Las Vegas, much less offer any definite or concrete plan to do so. (*See* Plaintiffs' First Amended Complaint at ¶ 14). Instead, Thompson alleges only that she desires the ability to access the goods and services available at Wynn Las Vegas. (*See id.*). However, such vague and amorphous allegations are insufficient to confer standing. *See, e.g.*, *Access 4 All*, 2005 WL 2989307, at *4 (holding that plaintiff's allegations that he "plans to return to the property to avail himself of the goods and services offered to the public at the property" are "someday intentions" and insufficient to obtain standing for injunctive relief under Title III of the ADA.).

But, even if Thompson did offer an allegation that she intended to return to Wynn Las Vegas in the near future, such allegation is not credible given her extensive litigation history. *See, e.g., Brother*, 331 F.Supp.2d at 1374-75 (holding that "in view of his extensive litigation history, [plaintiff's] professed intent to return to the property is insufficient."). Indeed, Thompson has instituted no less than six (6) lawsuits in this jurisdiction alone wherein she attempted to manufacture standing for DRAC. (*See* Exs. "8" through "13"). And, in several of those lawsuits, Thompson candidly admitted that she visited the subject properties solely as a "tester." (*See* Exs. "11" at ¶ 17, "12" at ¶ 16, and "13" at ¶ 16).

In sum, Thompson did not have standing when this lawsuit was filed and her belated effort to create standing on behalf of DRAC is too little too late. Because Thompson lacks standing to maintain this action, so does DRAC. Accordingly, all of DRAC's claims should be dismissed. *See Hunt*, 432 U.S. at 343, 97 S.Ct. at 2441.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

**IV.    ALTERNATIVELY, IF PLAINTIFFS CAN SOMEHOW ESTABLISH STANDING, THEY SHOULD NONETHELESS BE REQUIRED TO AMEND THEIR COMPLAINT TO PROVIDE A MORE DEFINITE STATEMENT**

**A.    A More Definite Statement Of the Alleged ADA Violations Is Necessary To Give Wynn Fair Notice Of Plaintiffs' Claims.**

Wynn recognizes that notice pleading does not require a litigant to plead excruciatingly detailed facts supporting every claim for relief.  However, a plaintiff must still plead *some* facts which give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *See Pickern v. Pier 1 Imports, Inc.*, 339 F. Supp. 2d 1081, 1088 (E.D. Cal. 2004).  That is, a "plaintiff must at least set forth enough details to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery."  *Self Directed Placement Corp., v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir. 1990) (citations omitted).  Additionally, "[m]ere conclusory statements of law do not, without more, establish a factual foundation for the asserted legal conclusion."  *DeShazier v. Williams*, No. CV-F-06-0591, 2006 WL 2522397, at * 6 (E.D. Cal. Aug. 29, 2006) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

Here, Plaintiffs' First Amended Complaint only vaguely identifies the general nature of the alleged ADA violations, without any reasonable description of the condition that allegedly violates the ADA.  The ambiguity of Plaintiffs' allegations is further compounded by the fact that, with few exceptions, Plaintiffs fail to give any indication of the location of the alleged ADA violations.  (*See* Plaintiffs' First Amended Complaint at ¶¶ 9(a)(2) through (a)(9), 9(c)(1), and 9(c)(2)).  Given the detailed requirements of ADAAG and the size of the premises of Wynn Las Vegas (*see supra* at n. 3), a reasonable description of the condition that allegedly violates the ADA and its location are critical to providing Wynn adequate notice of Plaintiffs' claims so that Wynn can comply with its Rule 11 obligations, investigate the validity (or lack thereof) of Plaintiffs' allegations, and make any remediations that are necessary and/or appropriate.[9]

---

[9] Wynn is only asking Plaintiffs to do what they have done in their previous ADA lawsuits.  (*See* Exs. "1" through "7").  Indeed, Plaintiffs' previous ADA complaints identify each and every ADA violation they allegedly encountered.  (*See id.*).

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

A review of the ADA violations alleged by Plaintiffs demonstrates the need for Plaintiffs to provide a more definite statement:

1.   Plaintiff Norkunas and Spalluto allege that there is "[n]o ADA required disabled seating in both theaters (not compliant with ADAAG 4.1.3(19), 4.33.2, 4.33.3, 4.33.4)." (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(1) and (b)).   As a preliminary matter, both theaters at Wynn Las Vegas have wheelchair seating. (*See https://boxoffice.wynnlasvegas.com/theater_maps.html* (maps of the Le Reve and Grail Theaters)).[10]   Since there is wheelchair seating in the theaters at Wynn Las Vegas, what are Plaintiffs really complaining about?  Unfortunately, Wynn can only speculate.  And, Plaintiffs' legal conclusions that Wynn violated various ADAAG[11] provisions do not shed any light on the factual basis, if any, of Plaintiffs' claims.  *See DeShazier*, No. CV F 06-0591, 2006 WL 2522397, at * 6 ("[m]ere conclusory statements of law do not, without more, establish a factual foundation for the asserted legal conclusion.") (citation omitted).

2.   Plaintiff Norkunas alleges that there is a "[l]ack of ADA directional signage (not compliant with ADAAG 4.1.2(7) and 4.1.3(16)." (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(2)).  Plaintiffs offer no allegation even generally identifying the location of the alleged lack of ADA directional signage.  (*See id.*).   Without knowing the location of the alleged ADA violation, Wynn cannot discern if ADAAG 4.1.2(7) or 4.1.3(16) even applies.   Indeed, ADAAG 4.1.2(7) and 4.1.3(16) only apply to signs which designate permanent rooms and spaces.

---

[10] In a June 11, 2007, article authored by Jane Ann Morrison in the Review Journal, Ms. Morrison commented on Plaintiffs' allegation that there is no ADA disabled seating in the theaters showing Le Reve and Spamalot.  (*See* Ex. "14").  Specifically, Ms. Morrison called Plaintiffs' allegations "unbelievable" because she "has seen people in wheelchairs at both shows." (*See id.*).

[11] As to the specific ADAAG provisions allegedly violated by Wynn: (1) ADAAG 4.1.3(19) addresses the number of required wheelchair locations; (2) ADAAG 4.33.2 addresses the size of wheelchair locations; (3) ADAAG 4.33.3 addresses the placement of wheelchair locations; and (4) ADAAG 4.33.4 requires the ground floors at wheelchair locations to be level.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

The application of ADAAG 4.1.3(16) is further restricted and excludes building directories, menus, and all other signs which are temporary.

3.   Plaintiff Norkunas alleges that there are "[a]ccessible routes with changes in elevation requiring handrails (not compliant with ADAAG 4.1, 4.3, 4.5, 4.8)."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(3)).  Notably, Plaintiffs do not allege that there are accessible routes with changes in elevation at Wynn Las Vegas that *do not* have handrails.  In other words, Paragraph 9(a)(3) of Plaintiffs' First Amended Complaint does not even state a violation of the ADA. But, even assuming that Paragraph 9(a)(3) of Plaintiffs' First Amended Complaint can reasonably be construed to state a violation of the ADA, Plaintiffs offer nothing to indicate the location of these areas that allegedly do not have handrails that are required by the ADA. Additionally, Plaintiffs' legal conclusions that Wynn violated ADAAG 4.1, 4.3, 4.5 and 4.8, each of which contains numerous requirements, provides no insight into the unknown factual basis of Plaintiffs' claims.[12]

4.   Plaintiff Norkunas alleges that there are "[r]amps without ADA compliant handrails (not compliant with ADAAG 4.1, 4.8)."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(4)).  Nowhere does Norkunas offer any allegation as to the locations of these alleged ADA violations.  (*See id.*).  The identification of the locations of these alleged ADA violations is important because ADAAG 4.8.5, a subsection of 4.8 that Plaintiffs allege Wynn violated, only requires handrails "[i]f a ramp run has a rise greater than 6 in (150 mm) or a horizontal projection greater than 72 in (1830 mm). . . ."  Therefore, without knowing the location of the alleged ADA violation and whether the ramps at issue have a rise greater than 6 inches or a horizontal projection greater than 72 inches, it is entirely possible that there may be ramps at Wynn Las Vegas without handrails which are still fully compliant with the ADA.

5.   Plaintiff Norkunas alleges that there are "[i]nterior doors requiring more than 5lbs of force to open (not compliant with ADAAG 4.1, 4.13)."  (*See* Plaintiffs' First Amended

---

[12] ADAAG 4.1 is compromised of well over one hundred (100) subparts and requirements, and addresses everything from the number of required ADA parking spaces to the accessibility of drinking fountains.  Similarly, ADAAG 4.3, 4.5 and 4.8 are comprised of over forty (40) subparts and addresses a variety of technical ADA requirements.

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

Complaint at ¶ 9(a)(5)).  Plaintiffs offer no allegation identifying the location of this alleged ADA violation.  (*See id.*).  Once again, the location of this alleged ADA violation is important because not all interior doors are required to have a maximum force of 5lbs for pushing or pulling.  For example, interior doors that are fire doors are not subject to 5lbs of force requirement.  *See* ADAAG 4.13.11(1).

6.      Plaintiff Norkunas and Thompson allege that there are "[c]ounters with cash registers that were not lowered for wheelchair access (not compliant with ADAAG 4.1, 4.32.4, 7.2)."  (*See* Plaintiffs' First Amended Complaint at ¶¶ 9(a)(6) and 9(c)(1)).  This allegation does not state an ADA violation.  Specifically, Plaintiffs cite to ADAAG 4.32.4 which requires tops of accessible tables and counters to be "28 in to 34 in (710 mm to 865 mm) above the finished floor or ground."  Yet, Plaintiffs do not allege that the subject counters, wherever they may be located, are not between 28 and 34 inches above the finished floor or ground.  Additionally, ADAAG 4.32.4 only applies to fixed or built-in seating or tables.  *See* ADAAG 4.32.1.  Thus, whether ADAAG 4.32.4 even applies depends entirely on the location of the subject counters which, at this point, remains a mystery.

Plaintiffs also allege that the subject counters violate ADAAG 7.2.  However, ADAAG 7.2 applies only to sales and service counters, such as department stores, retail stores, ticketing counters, teller stations, and registration counters in hotels and motels.  *See* ADAAG 7.2(1) and (2).  Because Plaintiffs fails to identify the location of the subject counters, Wynn has no way of knowing whether they are "sales and service counters" subject to ADAAG 7.2.

7.      Plaintiff Norkunas alleges that there are "[c]ounters for food that were not lowered (not compliant with ADAAG 4.1, 4.32.4, 5.2)."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(7)).[13]  This allegation also does not state an ADA violation.  Plaintiffs cite to ADAAG 4.32.4 which requires tops of accessible tables and counters to be "28 in to 34 in

---

[13] This allegation is virtually identical to Plaintiff Norkunas' allegation that there are "[d]ining areas with no accessible tables (not compliant with ADAAG 4.1, 4.32" and suffers from the same defects.  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(8)).

18

(710 mm to 865 mm) above the finished floor or ground."  But, Plaintiffs do not allege that the subject counters, wherever they may be located, are not between 28 and 34 inches above the finished floor or ground.  But, even if Plaintiffs did make such an allegation, ADAAG 5.2 creates an exception to the 34 inch height maximum if the counters are for "customers seated on stools or standing at the counter. . . ."  Thus, whether ADAAG 4.32.4 applies and/or has been violated depends entirely on the location of the subject counters, which Plaintiffs have failed to identify.

8.      Plaintiff Norkunas alleges that there are "[p]ublic restrooms with inaccessible elements (not compliant with ADAAG 4.1, 4.22)."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(10)).  This allegation is exceedingly vague because it requires Wynn to speculate as to what Plaintiffs mean by the term "inaccessible elements"; and, Plaintiffs' citation to ADAAG 4.1 and 4.22 provides no insight as to the factual basis, if any, of Plaintiffs' claim.  ADAAG 4.1 contains over one hundred (100) subparts and technical requirements, and ADAAG 4.22 sets forth numerous requirements for doors, floor space, water closets, urinals, lavatories, mirrors, controls, and dispensers.  Accordingly, besides not identifying the location of the subject bathrooms, Plaintiffs fail to identify, even in the most general terms, how these unknown and unidentified bathrooms are not ADA compliant.

9.      Plaintiff Norkunas alleges that a "lowered counter (at the Towers registration desk) that was repeatedly rendered inaccessible by placement of ornamental items so that less than 36 inches of counter space was available (as required by ADAAG 7.2(2))."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(a)(10)).[14]  This allegation misstates the technical requirements of ADAAG 7.2.(2).  Specifically, ADAAG 7.2(2) requires only that a registration counter provide "a minimum of 36 in (915 mm) in length. . . ."  That is, ADAAG 7.2(2) does not require 36 inches of counter *space* as Plaintiffs allege.

---

[14]  Thompson makes a similar allegation.  Specifically, Thompson alleges as follows: "Placement of objects so as to render inaccessible a lowered counter and a bathroom mirror (thus making those elements of Wynn Las Vegas noncompliant with ADAAG 4.22 and 7.22)."  (*See* Plaintiffs' First Amended Complaint at ¶ 9(c)(2)).  However, Thompson fails to identify:  (1) the objects that were placed that allegedly rendered the counter and bathroom mirror inaccessible; (2) how the placement of the objects allegedly rendered the counter and bathroom mirror inaccessible; and (3) the location of the subject bathroom.  (*See id.*).

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

It is readily apparent that Plaintiffs' First Amended Complaint fails to afford Wynn fair and adequate notice of the alleged ADA violations. Plaintiffs' First Amended Complaint is so vague and ambiguous that Wynn cannot investigate the validity of Plaintiffs' allegations or frame a responsive pleading. Under these circumstances, a "judge may in his discretion, in response to a motion for more definite statement under Federal rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case. . . ." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). In this particular case, Plaintiffs should be required to provide more detail and, specifically, provide a reasonable description of each and every ADA violation allegedly encountered by Plaintiffs, including the locations of the alleged ADA violations.

## B.   A More Definite Statement Is Necessary To Determine Whether Plaintiffs Have Standing To Raise Certain Alleged ADA Violations And To Prevent Plaintiffs From Going On A Fishing Expedition.

Requiring Plaintiffs to identify each and every alleged ADA violation (*i.e.*, provide a reasonable description of all alleged ADA violation and their location) is not only necessary to give Wynn fair notice of Plaintiffs' claims, but it is critical in determining whether Plaintiffs' even have standing to sue for a particular ADA violation. The law is clear that a plaintiff may only seek redress for ADA violations which he personally encountered or which he knew of at the time the complaint was filed. *See Jones v. Dollar Tree Stores, Inc.*, No. 204 CV 2002 MCEXJM, 2006 WL 1408667, at * 4 (E.D. Cal. May 19, 2006) (citing *Pickern*, 293 F.3d at 1136-38). In other words, Plaintiffs cannot generally allege, as they do, that an ADA violation exists and then seek to conduct an audit of the entire premises of Wynn Las Vegas to discover the location of all ADA violations, if any. *See Martinez* 2005 WL 2072013, at *4 ("[A] plaintiff in an ADA action does not, by the mere filing of a lawsuit alleging one violation, obtain the right to perform a wholesale audit of defendant's premises."); *see also DeShazier*, 2006 WL 2522397, at *6 ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.").

Similarly, courts have repeatedly held that an ADA plaintiff has standing to sue for only those ADA violations specifically alleged in his complaint because it is only those barriers which

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

he actually encountered or had knowledge of at the time of the filing of the complaint. *See White v. Divine Investments, Inc.*, No. CIV. S-04-0206, 2005 WL 2491543, at *4 (E.D. Cal. Oct. 7, 2005); *see also Hubbard,* 433 F.Supp. 2d at 1142-43 (holding that an ADA plaintiff has standing to sue for only those barriers she actually encountered and/or had knowledgeable at the time of the filing of the complaint); *El Torito Restaurants, Inc.*, 1997 WL 714866, at * 1 (limiting plaintiff to ADA violations identified in her complaint).

In *Pickern v. Pier 1 Imports*, 339 F. Supp. 2d at 1087-88, the plaintiff offered only general allegations of ADA violations. When the defendant sought to have these claims dismissed, the plaintiff offered "a host of new violations allegedly . . . uncovered by the plaintiff's expert" subsequent to the time of the filing of the original complaint. *See id.* The court in *Pickern* refused to "construe [plaintiff's] complaint as entirely generic and, throughout the litigation, incorporate any new factual allegations" because such practice "would read the 'fair notice' requirement out of Rule 8(a) and would seriously undermine the rule's goal of encouraging expeditious resolution of disputes." *Id.* at 1088.

Here, it appears that Plaintiffs are not only seeking redress for the alleged ADA violations generally identified in their First Amended Complaint, but for other unknown and unspecified alleged ADA violations. Indeed, Plaintiffs make clear that the ADA violations vaguely identified in their First Amended Complaint are only illustrative examples of the ADA violations that they allegedly encountered. (*See* Plaintiffs' First Amended Complaint at ¶¶ 9(a), 9(b) and 9(c) (stating that the discriminatory conditions encountered by Plaintiffs "include, *but are not limited to*. . . . .") (emphasis in original)). Accordingly, requiring Plaintiffs to identify *all* ADA violations that they allegedly encountered at Wynn Las Vegas, in including their location, is necessary to prevent Plaintiffs from going on a fishing expedition or conducting an ADA audit, neither of which they have a right to do.

## V.   CONCLUSION

Based on the foregoing, Wynn respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint in its entirety. Alternatively, Wynn requests that the Court require Plaintiffs

1    to provide a more definite statement and identify the nature and location of each and every

2    alleged discriminatory condition encountered by Plaintiffs at Wynn Las Vegas.

3        DATED this 22nd day of June, 2007.

4                                          BROWNSTEIN HYATT FARBER SCHRECK

5

6                                          _____/s/ Michael V. Infuso_____
                                           James J. Pisanelli, Esq., Bar No. 4027
7                                          Michael V. Infuso, Esq., Bar No. 7388
                                           Jarrod L. Rickard, Esq., Bar No. 10203
8                                          300 South Fourth Street, Suite 1200
                                           Las Vegas, Nevada  89101
9
                                           Attorneys for Defendants
10                                         Wynn Las Vegas, LLC, Wynn Resorts, Ltd.
                                           and Wynn Resorts Holdings LLC
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Brownstein Hyatt Farber Schreck, and that on this 22nd day of June, 2007, I served a true copy of the foregoing **DEFENDANT'S MOTION TO DISMISS, OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT** via electronic mail and U.S. Mail to:


Richard F. Armknecht, III
364 West 120 South
Lindon, Utah 84042
Phone: (801) 796-0901
Fax:     (413) 825-8570
adalaw@att.net

Attorneys for Plaintiffs


_____/s/ Shayna Ortega-Rose_____
An Employee of Brownstein Hyatt Farber Schreck

BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28