James J. Pisanelli, Esq., Bar No. 4027
Michael V. Infuso, Esq., Bar No. 7388
Jarrod L. Rickard, Esq., Bar No. 10203
BROWNSTEIN HYATT FARBER SCHRECK
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101
Telephone: (702) 382-2101

Attorneys for Defendants
Wynn Las Vegas, LLC, Wynn Resorts, Ltd.
and Wynn Resorts Holdings LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM NORKUNAS; PETER SPALLUTO; and, DISABLED RIGHTS ACTION COMMITTEE, a Utah nonprofit corporation;<br><br>                     Plaintiffs,<br>vs.<br><br>WYNN LAS VEGAS, LLC, a Nevada Limited Liability Company; WYNN RESORTS, LIMITED, a Nevada Corporation; and WYNN RESORTS HOLDINGS, LLC, a Nevada Limited Liability Company;<br><br>                     Defendants. | Case No. 2:07-CV-00096-RLH-PAL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT** |

**I.     INTRODUCTION**

Plaintiffs William Norkunas', Peter Spalluto's and Disabled Rights Action Committee's ("DRAC") (collectively "Plaintiffs") Opposition confirms what Defendants Wynn Las Vegas, LLC, Wynn Resorts Limited, and Wynn Resorts Holdings, LLC (collectively "Defendants") suspected from the beginning – that Plaintiffs are attempting to conduct an ADA audit of Wynn Las Vegas. In their Opposition, Plaintiffs brazenly declare that they are seeking "remediation of **all** ADA violations that relate to wheelchair access," regardless of whether Plaintiffs encountered, or even have knowledge of, these alleged, albeit unknown and unidentified, ADA violations. Plaintiffs' position has been flatly rejected by other courts, including the Ninth Circuit, and is otherwise contrary to the black letter of the ADA.

1

Plaintiffs' Opposition also confirms that they do not even have standing to maintain this action with respect to any of the alleged ADA violations vaguely identified in their First Amended Complaint. By their Motion, Defendants have challenged Plaintiffs' standing to maintain this action, and Defendants have done so with matters beyond Plaintiffs' First Amended Complaint. Having factually attacked Plaintiffs' standing (or, more appropriately, lack thereof), Plaintiffs were obligated to present evidence demonstrating that they do have standing to maintain this action. Plaintiffs, however, do not even acknowledge that they have the burden to prove their standing to maintain this action. Not having acknowledged their burden to establish standing, Plaintiffs certainly have not satisfied it.

Specifically, Plaintiffs offer no affidavits or any other evidence remotely suggesting that Plaintiffs have a definite or concrete plan to visit Wynn Las Vegas in the future (*i.e.*, a real and immediate threat of future harm). Instead, Plaintiffs rely exclusively on the exceedingly vague allegations of their First Amended Complaint. But, as demonstrated in Defendants' Motion, Plaintiffs' First Amended Complaint offers only legal conclusions, without any facts describing the condition that allegedly violates the ADA or locations of the alleged violations. Nor do Plaintiffs Norkunas' and Spalluto's allegations that they "frequently (i.e., more than once a year)" travel to Las Vegas and "plan on staying at Wynn Las Vegas each time" they travel to Las Vegas, somehow establish a real and immediate threat of future injury. In fact, these allegations are belied by Plaintiffs' own actions and litigation history; that is, both Norkunas and Spalluto are professional ADA plaintiffs who, by their own admission, haven't been to Las Vegas (or Wynn Las Vegas) in over a year and apparently have no intent to do so in the future.

In sum, Plaintiffs had the burden to establish that they have standing to maintain this action under the ADA and Plaintiffs failed to do so. Accordingly, Plaintiffs' First Amended Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. Plaintiffs Have The Burden Of Demonstrating That They Have Standing To Maintain This Action For Injunctive Relief Despite Their Frivolous Assertion To The Contrary.

Plaintiffs dispute that they have the burden of establishing their standing to raise the claims asserted in this action. (*See* Plaintiffs' Opposition at pp. 7-8). Plaintiffs' willingness to take positions that are contrary to well-settled law is indicative of their entire approach in this case.

The law is clear that "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Northwest Envtl. Defense Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992); *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990); *Deck v. Am. Hawaii Cruises, Inc.*, 121 F. Supp. 2d 1292, 1296 (D. Haw. 2000) (citation omitted). "Standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Northwest Envtl. Defense Ctr.*, 117 F.3d at 1528. Accordingly, there can be no legitimate debate that Plaintiffs' bear the burden of establishing standing and that, as demonstrated below, they failed to satisfy their burden.

### B. Plaintiffs Have Not Come Close To Satisfying Their Burden Of Demonstrating That They Have Standing To Maintain This Action For Injunctive Relief.

As set forth in Defendants' Motion, Plaintiffs were required to demonstrate a real and immediate threat of future injury by Defendants in order to have standing to seek injunctive relief under the ADA. (*See* Defendants' Motion at 8:5-12:2). More specifically, Plaintiffs were required to demonstrate a sufficient <u>probability</u> that Plaintiffs will again visit Wynn Las Vegas and again encounter the alleged ADA violations. (*See id.*).

Additionally, since Defendants have factually attacked Plaintiffs' standing to maintain this action by presenting matters beyond Plaintiffs' First Amended Complaint (*see id.* at 11:16-14:26 and Exhibits "1" – "13" thereto), Plaintiffs were required to present evidence that they do, in fact, have standing to maintain this action. *See Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into

1 a factual motion by presenting affidavits or other evidence properly brought before the court, the
2 party opposing the motion must furnish affidavits or other evidence necessary to satisfy its
3 burden of establishing subject matter jurisdiction."); *Northwest Envtl. Defense Ctr.*, 117 F.3d at
4 1528 ("Standing must be supported in the same way as any other matter on which the plaintiff
5 bears the burden of proof."). And, with a factual Rule 12(b)(1) attack, the Court "need not
6 presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th
7 Cir. 2000).

8 Here, Plaintiffs have failed to submit any evidence demonstrating that they have standing
9 to maintain this action; that is, that there is a sufficient probability that Plaintiffs will again visit
10 Wynn Las Vegas and again encounter the alleged ADA violations. (*See generally* Plaintiffs'
11 Opposition). Not one affidavit or any other evidence was offered by Plaintiffs tending to suggest
12 that they have a definite or concrete plan to return to Wynn Las Vegas. (*See id.*). Instead,
13 Plaintiffs have chosen to rely exclusively on the conclusory allegations of their First Amended
14 Complaint, which the Court need not presume as true. *See White*, 227 F.3d at 1242. However, in
15 addition to being incredible and disingenuous, the allegations of Plaintiffs' First Amended
16 Complaint fall far short in establishing Plaintiffs' standing to maintain this action.

17 Specifically, Plaintiff Norkunas alleges that he travels from his home in Florida to
18 Las Vegas "frequently (i.e., more than once a year)" and that he "plans" on staying at Wynn
19 Las Vegas on each such trip. (*See* Plaintiffs' First Amended Complaint at ¶ 12). This conclusory
20 allegation, however, is directly contradicted by Norkunas' own admission that his last visit to
21 Wynn Las Vegas occurred in February, 2006 (*i.e.*, more than a year ago). (*See id.* at ¶ 9(a)).
22 Certainly, had Norkunas actually visited Wynn Las Vegas after February, 2006 or even made a
23 concrete plan to visit Wynn Las Vegas, he surely would have said so in his Opposition to
24 Defendants' Motion. But, Norkunas offered no such testimony. If Norkunas hasn't visited Wynn
25 Las Vegas in over a year and has no current plan to do so, he certainly does not face a real and
26 <u>immediate</u> threat of future injury by Defendants, a basic requirement for standing to seek
27 injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8, 103 S.Ct. 1167, 1168
28 n.8 (1983). Therefore, Norkunas lacks standing to maintain this action.

Even more egregiously, Spalluto does not even allege that he intends to stay at Wynn Las Vegas. Instead, Spalluto alleges only that he travels from his home in Florida to Las Vegas "frequently (i.e., more than once a year)" and "<u>desires</u> the ability to access . . . the goods and services available to the public at Wynn Las Vegas." (*See* Plaintiffs' First Amended Complaint at ¶ 13) (emphasis added). However, Spalluto last visited Wynn Las Vegas in August, 2006 (*i.e.*, a year ago). (*See id.* at ¶ 9(b)). Again, had Spalluto visited Wynn Las Vegas after August, 2006 or made a concrete plan to visit Wynn Las Vegas, he surely would have said so in his Opposition to Defendants' Motion. But, like Norkunas, Spalluto offered no such testimony. Therefore, Spalluto also does not face a real and immediate threat of future injury, sufficient to confer standing on Spalluto to maintain this action.

More egregious yet, DRAC has attempted to manufacture its standing. Specifically, DRAC alleges only that its representative members (*i.e.* Tamara Thompson and Robert Lee) encountered or gained knowledge of the alleged ADA violations at Wynn Las Vegas <u>after</u> the filing of the initial complaint in this matter. (*See id.* at ¶ 9(c)). However, such belated efforts to create standing are irrelevant and are routinely rejected by courts. *See, e.g.*, *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1253-54 (M.D. Fla. 2000) (holding that plaintiff's visit to defendant's business *after* the complaint was filed did not confer standing). DRAC's after-the-fact attempt to create standing to maintain this action should be flatly rejected by the Court.

Nor does DRAC offer any allegation that any of its members have a definite or concrete plan to visit Wynn Las Vegas in the immediate future. Instead, like Spalluto, DRAC alleges only that its members "<u>desire</u> the ability to access . . . the goods and services available to the public at Wynn Las Vegas." (*See* Plaintiffs' First Amended Complaint at ¶ 14) (emphasis added). It is precisely these type of "someday" intentions that courts have found insufficient to establish standing (*i.e.*, a real an immediate threat of future injury). *See, e.g.*, *Deck*, 121 F. Supp. 2d at 1298-99 (finding no standing under ADA because plaintiff failed to allege any plans to use defendant's services in the future); *see also Deli v. El Torito Restaurants, Inc.*, No. C-94-3900-CAL, 1997 WL 714866, at *5 (N.D. Cal. June 24, 1997) (finding no standing

under ADA because plaintiff failed to allege that she intended to return to the restaurant); *O'Brien v. Werner Bus Lines, Inc.*, No. 94-6862, 1996 WL 82484, *5 (E.D. Pa. Feb. 27, 1996) (finding no standing under the ADA because plaintiffs failed to show "that they are likely to use Werner buses in the near future or, if they do use them, that Werner is likely to violate their rights under the ADA again.").

Additionally, Plaintiffs' litigation history and status as professional ADA plaintiffs undercuts their professed intent to someday visit Wynn Las Vegas. (*See* Defendants' Motion at 12:3-14:22 and Exhibits "1" – "13" thereto). *See, e.g.*, *Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, 1216-17 (S.D. Cal. 2007) (holding that an ADA "tester" lacked standing to bring an ADA action); *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160, 1164-68 (C.D. Cal. 2005) ("Courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return."); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1374-75 (M.D. Fla. 2004) (holding that "in view of his extensive litigation history, [plaintiff's] professed intent to return to the property is insufficient."). Although Plaintiffs assert that Defendants have "profoundly mischaracterized" the numerous complaints filed by Plaintiffs (attached as Exhibits "1" – "13" to Defendants' Motion), Plaintiffs fail to offer any explanation as to how Defendants mischaracterized the nature or allegations of the plethora of lawsuits previously filed by Plaintiffs. (*See* Plaintiffs' Opposition at p. 9-10). This omission by Plaintiffs is no accident.[1]

Finally, Plaintiffs' failure to sufficiently identify the ADA violations that they allegedly encountered or have knowledge of (*see* Defendants' Motion at 15:1-21:24) further compounds the

---

[1] Citing to several cases, Plaintiffs assert that their status as professional ADA plaintiffs does not deprive them of standing to maintain this action. (*See* Plaintiffs' Opposition at pp. 9-10). Plaintiffs do not dispute, however, that their litigation history is at least a relevant factor to consider and can undercut their professed intent to return to Wynn Las Vegas. (*See id.*). In any event, the cases cited by Plaintiffs are either factually inapposite to the case here or actually support Defendants' contention that Plaintiffs do not face a real and immediate threat of future injury sufficient to establish standing. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1288 (10th Cir. 2004) (holding that a mere "desire" to return to the defendant's property was not sufficient to confer standing on plaintiff); *Molski v. Price*, 224 F.R.D. 479, 483 (C.D. Cal. 2004) (finding standing where plaintiff had the opportunity to use the defendant's service station "10 to 50 times per year."); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 725 (8th Cir. 2003) (holding that a tester may have standing to claim nominal damages (not injunctive relief) under the employment provisions of Title I of the ADA); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 227 (D.N.J. 2003) (refusing to reach the issue of whether an ADA tester has standing to seek injunctive relief).

already speculative nature of Plaintiffs' standing. *See Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1142 (S.D. Cal. 2006) ("[A]n ADA plaintiff only has standing to sue for barriers the plaintiff had knowledge of or actually encountered.") (citation omitted). Indeed, even assuming Plaintiffs presented evidence demonstrating a probability of future injury, without knowing the specific nature or location of the vaguely alleged ADA violations, it cannot reasonably be determined if Plaintiffs actually possess standing to maintain this action. Yet, it was Plaintiffs' burden to demonstrate, by a preponderance of the evidence, that they have standing to maintain this action. *See Northwest Environmental Defense Center*, 117 F.3d at 1528. Plaintiffs' failure to meet their burden requires dismissal of this action.

### C. Contrary To Plaintiffs' Assertion, They Do Not Have Standing To Sue For All ADA Violations Regardless Of Whether They Encountered Or Even Have Knowledge Of Those Unknown And Unidentified ADA Violations.

Plaintiffs conceded in their Opposition that they may not pursue relief for ADA violations that do not relate to their disabilities (*i.e.*, wheelchair access). (*See* Plaintiffs' Opposition at p.12). However, Plaintiffs contend that they "have standing to seek remediation of all ADA violations that relate to wheelchair access" regardless of whether they encountered or even have knowledge of the unidentified ADA violations. *Id.* (emphasis added). Plaintiffs' assertion is frivolous.

The law is clear that a plaintiff may only seek redress for ADA violations which he personally encountered or which he knew of at the time the complaint was filed. *See Hubbard*, 433 F. Supp. 2d at 1141 (*citing Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002)); *see also White v. Divine Inv., Inc.*, No. CIV. S-04-0206, 2005 WL 2491543, at *4 (E.D. Cal. Oct. 7, 2005); *See Martinez v. Longs Drug Stores, Inc.*, No. CIVS-03-1843 DFL, 2005 WL 2072013, at *4 (E.D. Cal. Aug. 25, 2005) ("[A] plaintiff in an ADA action does not, by the mere filing of a lawsuit alleging one violation, obtain the right to perform a wholesale audit of defendants' premises."); *Jones v. Dollar Tree Stores, Inc.*, No. 204 CV 2002 MCEXJM, 2006 WL 1408667, at * 4 (E.D. Cal. May 19, 2006) (citing *Pickern*, 293 F.3d at 1136-38). Additionally, courts routinely hold that an ADA plaintiff has standing to sue for only those ADA violations specifically alleged in his complaint because it is only those barriers which he actually encountered or had knowledge of at the time of the filing of the complaint. *See White*, 2005

WL 2491543, at *4; *see also Hubbard,* 433 F.Supp. 2d at 1142-43 (holding that an ADA plaintiff has standing to sue for only those barriers she actually encountered and/or had knowledgeable of at the time of the filing of the complaint); *El Torito Restaurants, Inc.*, 1997 WL 714866, at * 1 (limiting plaintiff to ADA violations identified in her complaint).  Notably, Plaintiffs make no attempt to distinguish any of the foregoing authority cited by Defendants.

Instead, Plaintiffs rely on *Steger v. Franco*, 228 F.3d 889 (8th Cir. 2000), which they claim the Ninth Circuit adopted in *Pickern*, for the proposition that they have standing to sue for all ADA violations that relate to their disabilities.  (*See* Plaintiffs' Opposition at pp.12-13) (*citing*).  Plaintiffs are wrong.  First, the Ninth Circuit has not adopted *Steger*.  In fact, other courts have specifically recognized and held that:  (1) *Steger* has not been adopted by the Ninth Circuit; and (2) the reasoning of *Steger* is "fundamentally incompatible with constitutional standing principle[s]."  *Martinez*, 2005 WL 2072013, at *3-4; *see also Hubbard*, 433 F. Supp. 2d at 1142 (citation omitted).  Second, in *Pickern*, the Ninth Circuit held only that an ADA plaintiff has standing to sue for those barriers that "he has actual knowledge of. . . ."  *Pickern*, 293 F.3d at 1136-38.  Therefore, contrary to Plaintiffs' assertion, Plaintiffs have standing, if any, to sue for only those alleged ADA violations specifically identified in their First Amended Complaint because it is only those alleged violations that Plaintiffs actually encountered or have knowledge of.

### D. Plaintiffs Do Not Dispute That They Are Not Entitled To Disgorgement Of Defendants' Profits.

In their Motion, Defendants contend that Plaintiffs' request for "disgorgement of Defendants' profits" should be dismissed.  (*See* Defendants' Motion at 8 n.8).  For this proposition, Defendants cited to several cases standing for the proposition that "[i]njunctive relief is the only remedy to which a private plaintiff is entitled in a suit brought pursuant to Title III of the ADA."  *Deck*, 121 F. Supp. 2d at 1297 n.5 (*citing* 42 U.S.C. §12188(a)(1), 28 C.F.R. §36.501 and 28 C.F.R. §36.504); *see also Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").  Importantly, Plaintiffs concede, by failing to oppose, that they are not entitled to

damages in the form of a disgorgement of Defendants' profits.  (*See generally* Plaintiffs' Opposition).  Accordingly, Plaintiffs agree that their request for damages in the form of "the disgorgement of Defendants' profits" should be dismissed.

  **E.**  **At A Minimum, Plaintiffs Should Be Required To Provide A More Definite Statement And Provide A Reasonable Description Of Each And Every ADA Violation Allegedly Encountered By Or Known To Plaintiffs, Including The Locations Of The Alleged Violations**.

As set forth in great detail in Defendants' Motion, Plaintiffs should, at a minimum, be required to identify each and every ADA violation allegedly encountered by or known to Plaintiffs to:  (1) give Defendants fair and adequate notice of the alleged ADA violations; (2) determine whether Plaintiffs have standing to raise certain alleged ADA violations; and (3) prevent Plaintiffs from going on a fishing expedition or conducting an ADA audit, neither of which they have a right to do. (*See* Defendants' Motion at 15:1-21:24).  Plaintiffs make no effort to refute Defendants' contention that a more definite statement is needed for the reasons above. (*See* Plaintiffs' Opposition at pp. 2-7).  In fact, Plaintiffs do not even discuss the allegations contained in their First Amended Complaint or offer any explanation as to how or why those allegations are sufficient. (*See id.*).  Instead, Plaintiffs, relying on *Conley v. Gibson*, 355 U.S. 41 (1957), claim that Defendants are demanding a heightened pleading requirement.  (*See id.*)  Plaintiffs are wrong and their reliance on *Conley* is misplaced.

The United States Supreme Court recently held that a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ." *Bell Atlantic Corp. v. Twomby*, -- U.S. --, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).  The Supreme Court also held that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (emphasis added).  That is, a complaint must contain "enough facts to state a claim to relief that is plausible of its face." *Id.* at 1974 (emphasis added).  Contrary to Plaintiffs' assertion, this standard is not a heightened pleading requirement (or a substitute for discovery), but the minimum level of pleading that is necessary to avoid discovery abuse. *Id.* at 1967.

Additionally, the Supreme Court in *Bell Atlantic* Court expressly abrogated *Conley*, the case extensively relied on by Plaintiffs. (*See* Plaintiffs' Opposition pp. 4-6). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969; *see also Mitan v. Feeney*, No. CV 07-3086SVWJWJX, 2007 WL 2068106, at *9 (C.D. Cal. July 18, 2007) (noting the abrogation of the *Conley* rule); *A.C. Steelman v. Prudential Ins. Co. of Am.*, No. CIV. S-06-2746 LKK/GGH, 2007 WL 2009805, at *4 n.14 (E.D. Cal. July 6, 2007) (same). In abrogating *Conley*, the Supreme Court noted that conclusory allegations, which may have been permitted under the old *Conley* standard, "left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Bell Atlantic Corp.*, 127 S.Ct. at 1968. Although the Supreme Court has now made clear that this practice is improper, this is precisely what Plaintiffs are attempting to do here.

Again, Plaintiffs' First Amended Complaint only vaguely identifies the alleged ADA violations. These conclusory and general allegations, devoid of any actual facts regarding the nature or location of the ADA violations Plaintiffs allegedly encountered or have knowledge of, are unquestionably insufficient under the standard articulated in *Bell Atlantic Corp.* Indeed, Plaintiffs' allegations that Defendants violated broad provisions of the ADA (specifically, the ADA Accessibility Guidelines) (*see* Plaintiffs' First Amended Complaint at ¶ 9), are merely "labels and conclusions" and "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 127 S.Ct at 1964-65. Accordingly, to satisfy the pleading standard of *Bell Atlantic Corp.*, to assess Plaintiffs' standing to sue for certain alleged ADA violations, and to prevent discovery abuse, Plaintiffs should be required to provide a more definite statement and identify the nature and location of each and every alleged ADA violation encountered by or known to Plaintiffs. *See id.* at 1968 (stating the problem of discovery abuse should be addressed at the pleading stage) (citations omitted).

### III.   CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint in its entirety. Alternatively, Defendants request that the Court require Plaintiffs to provide a more definite statement and identify the nature and location of each

and every alleged discriminatory condition encountered by or known to Plaintiffs at Wynn Las Vegas.

DATED this 21st day of August, 2007.

BROWNSTEIN HYATT FARBER SCHRECK

By: /s/ Michael V. Infuso
James J. Pisanelli, Esq., Bar No. 4027
Michael V. Infuso, Esq., Bar No. 7388
Jarrod L. Rickard, Esq., Bar No. 10203
300 South Fourth Street, Suite 1200
Las Vegas, Nevada 89101

Attorneys for Defendants Wynn Las Vegas, LLC, Wynn Resorts, Ltd. and Wynn Resorts Holdings LLC

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that I am an employee of Brownstein Hyatt Farber Schreck, and that on this 21st day of August, 2007, I served a true copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT** via electronic mail and U.S. Mail to:

Richard F. Armknecht, III
364 West 120 South
Lindon, Utah 84042
Phone: (801) 796-0901
Fax:     (413) 825-8570
adalaw@att.net

Attorneys for Plaintiffs

　　　　　　　　　　　　　　__/s/ Emily Schmitz_____
　　　　　　　　　　　　　　An Employee of Brownstein Hyatt Farber Schreck